UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TIMOTHY ALLAN DUNLAP,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>DENNIS FRICK,<br><br>　　　　　Defendant. | Case No. 1:13-cv-00299-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

**INTRODUCTION**

Before the Court is Defendant's Motion for Summary Judgment, filed on October 24, 2014, (Dkt. 56), as well as several other motions filed by Plaintiff. His motions include a motion to quash (Dkt. 60), a motion for leave to have a copy of the Constitution in the courtroom (Dkt. 64), a motion or notice regarding proposed case law (Dkt. 66), and a motion for leave to amend his complaint (Dkt. 69). The motions are fully briefed and ripe for the Court's consideration. All parties have consented to the jurisdiction of the undersigned United States Magistrate judge to issue final orders in this case.

Having fully reviewed the record herein, the Court finds the facts and legal arguments are adequately presented in the briefs and record. In the interest of avoiding

**MEMORANDUM DECISION AND ORDER - 1**

delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, the motions will be decided on the record before the Court without oral argument. Dist. Idaho L. Rule 7.1(d).

## FACTS[1]

Plaintiff Timothy Alan Dunlap, a prisoner under a sentence of death, is in the custody of the Idaho Department of Correction (IDOC) and currently incarcerated at Idaho Maximum Security Institution (IMSI). Plaintiff filed the instant civil rights action on July 12, 2013, claiming that Defendant Dennis Frick is violating Plaintiff's Eighth Amendment rights by not allowing Plaintiff more than two meals per day on Saturdays and Sundays, and by decreasing the sodium content in his food causing a serious health condition. The Court issued an initial review order on October 1, 2013, allowing his Eighth Amendment claims to proceed.

Defendant Dennis Frick is an employee of the Idaho Department of Correction ("IDOC") working at the Idaho Maximum Security Institute ("IMSI") as the Food Service Manager. He has held that position since 2010.

IDOC employs a Dietary Services Manager, and Katie Hall has held that position during the times mentioned in Plaintiff's complaint. In addition, IDOC requires a registered dietitian to perform semi-annual nutritional reviews of IDOC inmate menus. Carolyn Simpson performed such a review during the times mentioned in Plaintiff's complaint.

---

[1] The Court finds the following facts material and undisputed or, when disputed, taken in the light most favorable to the Plaintiff and non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (recognizing the district court's obligation to construe the record in the light most favorable to the non-moving party on motion for summary judgment).

**MEMORANDUM DECISION AND ORDER - 2**

Beginning on October 10, 2011, only two meals per day were served to inmates on the weekends. IDOC policies and procedures specify that inmates have the option of selecting meals off the mainline menu or selecting one of the five selective diets. Dietary needs not met by either option must be ordered by the medical provider through a medical Diet Authorization form. Inmate menus are prepared by the Dietary Services Manager, and the Food Services Manager (Defendant) is responsible for ensuring meals are served according to the menu.

IDOC policy includes also a requirement that all inmate meal menus are reviewed by a registered dietitian to ensure nutritional standards are maintained. Carolyn Simpson reviewed the menus to ensure the Recommended Daily Allowances were met and the caloric intake complied with the Dietary Recommended Intake based on an average adult male inmate. Between January of 2011 and December of 2013, the inmate mainline menus approved by Simpson met the caloric needs of the average male inmate and met or exceeded the recommended daily sodium intake level. For an average 37 year old male who is 5' 10" tall and weighs 175 pounds, Katie Hall indicated that the average calories per day was 2,673 – 2, 976. This caloric average was provided for in the two meals served each weekend day, and the three meals per day served during the week.

In April of 2011, Plaintiff weighed 179 pounds. Since November of 2011 until Plaintiff filed his complaint, Plaintiff has maintained an average weight of 190 pounds and is considered overweight for his height of five feet seven inches. In May of 2012, Plaintiff was seen at the hospital and diagnosed with hyponatremia. One cause of hyponatremia is overconsumption of water at a level that depletes sodium levels in the

**MEMORANDUM DECISION AND ORDER - 3**

body. Medical service provider Joseph Cardona indicated the cause of Plaintiff's hyponatremia, and resulting chest pains, was due to his water consumption.

## DISPOSITION

1.      **Evidentiary Objection**

Plaintiff filed a motion to quash Defendant's second affidavit (Dkt. 60), which affidavit was submitted in support of Defendant's motion for summary judgment. Plaintiff claims the Second Affidavit is misleading, malicious, and a "stall tactic and deceitful of the law." Plaintiff argues that (1) Defendant has misled the court by admitting the food "is/was/never changed;" and (2) lunches during the weekends could be put back on the menu quite readily. The evidence submitted in support of this claim indicates that ingredient substitutions were made, however, not that whole meals were added to the menu. (Dkt. 60-1.) In his affidavit, Defendant Frick indicated that he may make a substitution or change to the menu only when there is an inadequate supply to feed the inmates, the supplier has a shortage of necessary ingredients, or the facility is in lockdown. Second Aff. of Frick ¶ 6 (Dkt. 56-3.)

Because Plaintiff has cited no rule or other authority, the Court presumes he is proceeding under Fed. R. Civ. P. 56(h). Rule 56(h) states that, if "satisfied that an affidavit or declaration under this rule is submitted in bad faith or solely for delay," the Court may impose sanctions on the offending party. A finding of bad faith "requires a deliberate or knowing act for an improper purpose." *Rexroat v. Arizona Dept. of Educ.*, No. CIV. 11-1028-PHX-PGR, 2012 WL 5936672, at *4 (D. Az. Nov. 26, 2012) (citing

**MEMORANDUM DECISION AND ORDER - 4**

*Raher v. Federal Bureau of Prisons*, No. 03:09-cv-0526-ST, 2011 WL 4832574, at *8 (D. Or. Oct. 12, 2011.) In addition, *Raher* found that the conduct must be egregious. *Raher*, 2011 WL 4832574 at * 9 ("Raher has not submitted any evidence of egregious conduct by either of those individuals.")

Here, the document submitted by Plaintiff is consistent with Defendant Frick's affidavit. Defendant never indicated the menu did not change, only that he may make a substitution of ingredients if necessary and in limited circumstances. These limited and specific changes are not congruous with a request to add an entire meal to the menu during the weekends. There is no evidence that the affidavit is misleading, malicious, or submitted in bad faith. Plaintiff's motion to quash will be denied.[2]

**2.   Summary Judgment Standard**

One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247–48 (1986).

---

[2] Defendant argued also that Plaintiff's motion to quash was untimely, because it was filed after the time to respond to the Defendant's motion for summary judgment. The Court reached the merits instead, and therefore found it unnecessary to consider the timeliness of the motion.

**MEMORANDUM DECISION AND ORDER - 5**

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Deveraux*, 263 F.3d at 1076. The non-moving party must go beyond the pleadings and show "by her [ ] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists. *Celotex*, 477 U.S. at 324.

However, the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (quotation omitted). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *So. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

3. **Constitutional Claim Brought Under 42 U.S.C. § 1983 Against Defendant Frisk**

The Eighth Amendment requires that prison officials "must take care that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citations omitted). To state a claim under the Eighth Amendment, a prisoner must

show that officials were deliberately indifferent to his basic needs. *Id*. at 837. Deliberate indifference exists when an official knows of and disregards a substantial risk of serious harm, or when an official is "aware of facts from which the inference could be drawn that a substantial risk of harm exists," and actually draws such an inference. *Id*.

Once these basic needs are met, the Constitution "does not mandate comfortable prisons," *see Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), and prisoners do not have a right to food that is aesthetically pleasing or especially flavorful. *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir.1993). Rather, prison food need only be minimally "adequate to maintain health." *LeMaire*, 12 F.3d at 1456; *see also Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir.1985) ("[t]he fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation.").

Plaintiff has not produced sufficient evidence to create a genuine dispute as to any material fact in support of his claims that the two meals per day on weekend days or the sodium content in the meals was inadequate to maintain health. Rather, the evidence introduced by Defendant indicates to the contrary. Meals at IMSI maintained a daily caloric average, even on weekends when only two meals were served. Plaintiff did not lose weight, rather he gained weight. And, medical evidence as to his alleged heart attack indicates he suffered from overconsumption of water and low sodium levels as a result. The nutrition analysis provided by Defendant establishes that the meals contained adequate sodium levels for health maintenance. Plaintiff's conclusory statements that he

lost weight and suffered a medical condition due to his diet are insufficient to create a disputed issue of fact.

Plaintiff argues that the two meals a day on weekends were nutritionally inadequate and constituted a violation of the Eighth Amendment. But, Ms. Hall indicated she prepared menus on the weekends to account for all nutritional and caloric needs through the provision of two meals each day. The serving of two meals per day on the weekend that meet dietary recommendations and standards to maintain adequate health does not constitute a sufficiently serious deprivation to establish an Eighth Amendment violation. *See Green v. Ferrell*, 801 F.2d 765, 770-71 (5th Cir. 1986) (setting aside the magistrate judge's findings that the jail must provide three meals per day, and finding two nutritionally adequate meals per day met constitutional standards).

**4.     Motion to Amend Complaint**

Plaintiff filed his motion to amend on January 15, 2015, seeking to add claims that, in 1997, Defendant participated in a conspiracy to deprive death-row inmates of video games and typewriters. He seeks to add a First Amendment claim and a second Eighth Amendment claim.[3]

Plaintiff's motion to amend is untimely. The Court required all motions to amend pleadings to be filed within 90 days from March 28, 2014. (Dkt. 39.) The deadline, therefore, expired on June 26, 2014. Absent good cause, the Court's scheduling order may not be modified. Fed. R. Civ. P. 16(b)(4). Although Fed. R. Civ. P. 15(a)(2) states

---

[3] Plaintiff filed a similar motion on November 8, 2013, in which he sought permission to amend his complaint to include allegations regarding confiscation of videogames. (Dkt. 23.) The Court denied that motion.

**MEMORANDUM DECISION AND ORDER  - 8**

that the Court should "freely give leave [to amend] when justice so requires," the liberal amendment standard gives way when a motion for leave to amend is filed after the scheduling deadline imposed by the Court. *See AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F. 3d 946, 952 ((9th Cir. Cir. 2006) ("[the] tardy motion had to satisfy the more stringent "good cause" showing required under Rule 16," citing *Johnson v. Mammoth Recreations, Inc*., 975 F.2d 604, 607-08 (9th Cir. Cir. 1992)). The primary consideration in the good cause analysis is the diligence of the party seeking amendment.

Plaintiff filed his motion to amend more than one year after the Court's deadline to file motions to amend the pleadings. Plaintiff has not made any showing of diligence as to why he could not meet the deadline. Further, it appears that Plaintiff's claims, having arisen in 1997, would be barred by the two year statute of limitations applicable to Section 1983 claims. *See Greenfield v. City of Post Falls Municipality*, No. 2:13–cv–00437–CWD, 2014 WL 1343478 at *6 (D. Idaho Apr. 3, 2014) (explaining statute of limitations applicable to civil rights cases).

## CONCLUSION

Plaintiff has not carried his burden upon summary judgment. Further, his claims do not rise to the level of an Eighth Amendment violation. Accordingly, Defendant is entitled to judgment as a matter of law.

Plaintiff has not shown good cause under Rule 16 to amend his complaint over one year after the Court's deadline imposed in the scheduling order. Plaintiff's Motion to Amend will be denied.

As for Plaintiff's other motions requesting a copy of the Constitution in the courtroom during trial and motion to adopt the "hourglass design standard," these motions need not be decided to resolve the above dispositive issues, and will be denied as moot.

# ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) Plaintiff's Motion to Quash (Dkt. 60) is **DENIED**.

2) Defendant's Motion for Summary Judgment (Dkt. 56) is **GRANTED**.

3) Plaintiff's Motion to Amend Complaint (Dkt. 69) is **DENIED**.

4) Plaintiff's Motion for Leave to Have a Copy of the Constitution in the Courtroom (Dkt. 64) is **DENIED as MOOT**.

5) Plaintiff's Notice/Motion Proposed Case Law – Motion for it to be Adopted (Dkt. 66) is **DENIED as MOOT**.

Dated: **March 16, 2015**

Honorable Candy W. Dale
United States Magistrate Judge